CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUN 14 2016

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| BENJAMIN BURRUSS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:15-CV-00065 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| GARNETT RILEY, et al., | ) | By: Hon. Glen E. Conrad |
| | ) | Chief United States District Judge |
| Defendants. | ) | |
| | ) | |

Plaintiff Benjamin Burruss filed this action against defendants Albemarle County, Virginia (the "County") and several police officers with the Albemarle County Police Department ("ACPD"), alleging violations of 42 U.S.C. § 1983 and state law. The case is presently before the court on defendants' motion to dismiss. For the following reasons, the court will grant in part and deny in part the motion to dismiss.

### Factual Background

The following facts, taken from plaintiff's complaint, are accepted as true for purposes of the motion to dismiss. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

Benjamin Burruss is a 58-year-old resident of the County. On the morning of November 21, 2013, Burruss was staying at the Comfort Inn (the "Inn"), located within the County. At the time, Burruss was preparing to embark on a camping and hunting trip in Montana. This trip was intended to "relieve stress he had been encountering due to difficulties at his job and in his marriage." Compl. ¶ 14. That morning, Burruss' employer contacted the ACPD and requested a welfare check on him. The employer told the ACPD that Burruss was at the Inn, and that Burruss intended to go hunting and might have a firearm, but that he had not made any statements that he wanted to hurt himself or others.

At 10:40 a.m., Officer Jatanna Rigsby arrived at the Inn. Officer Rigsby spoke to some employees at the Inn and learned that Burruss had spoken with a manager at 9:00 a.m. and had informed the front desk that he was checking out. At this point, Officer Rigsby alerted other ACPD officers that Burruss was leaving the Inn. At 10:50 a.m., Officer Robert Warfel arrived. Burruss then left the Inn and walked towards his truck, which was located in the Inn's parking lot. Officers Rigsby and Warfel approached Burruss—who was wearing a t-shirt, camouflage pants, and an orange hunting cap—and asked to speak with him; however, Burruss told the officers that he did not want to talk and asked if they had a warrant. At some point thereafter, Officers Garnett "Chip" Riley and Ken Richardson arrived at the Inn. Officer Riley attempted to speak with Burruss, who reiterated that he did not want to talk. Officer Peter Mainzer then arrived. Burruss started his truck and put it in reverse to leave, but Officer Riley ordered him to stop and put the car in park. Burruss complied with the orders.

In order to prevent Burruss from leaving, Officers Riley and Richardson instructed Officers Warfel and/or Rigsby to deploy a "stinger" device behind Burruss' truck. Id. ¶ 24. A stinger is a portable strip with upward-facing spikes that can puncture and flatten a vehicle's tires if a person attempts to drive over it. Burruss was told that his tires would be damaged if he attempted to leave. In addition to the stinger, the complaint alleges that Burruss was prevented from leaving the parking lot due to the placement of four ACPD vehicles and the presence of Officers Warfel, Riley, Rigsby, and Richardson. Burruss' truck battery also died because Officer Richardson kept the passenger's door of the truck open during this encounter.

Burruss then informed Officer Riley that he had a gun in the backseat of his truck, but indicated that he had been hunting. Burruss further related that the gun was not loaded, and that he was unaware of any ammunition in the truck. The complaint alleges that, during this

2

conversation, the gun was in plain sight. Burruss also told Officer Riley that the gun was for his upcoming hunting trip in Montana. In response, Officer Riley ordered Burruss not to reach into the back seat of the truck; Burruss complied with these orders. Nevertheless, Burruss still refused to leave his truck and said that he was not going to harm anyone, but that he simply wanted the officers to leave so that he could "think for himself." Id. ¶ 31. Burruss did, however, inform Officer Riley that he had recently changed his medications for depression, and that he was upset that his wife told him that she no longer loved him.

At some point, Officer Rigsby contacted Burruss' wife, Kelly Burruss, who confirmed that Burruss had not made any threats to harm himself or others. Mrs. Burruss also indicated that Burruss had sent her a text, saying that he was going out west to hunt. The complaint alleges that, upon receiving this information from Mrs. Burruss, Officer Riley said to the other officers, "We got nothin'," and told Burruss that they were going to let him leave. Id. ¶ 32. Specifically, Officer Riley informed Burruss that he "just need[ed] to check things" to "make sure everything [was] good[,]" and then Burruss would be "good to go." Id. Officer Riley also told the other officers that he had "no reason to hold [Burruss]," explaining that Burruss had not made any threats to harm himself or others, and that his depression was no different from any other person's.

According to the complaint, the officers then explored other grounds to justify holding Burruss. Officer Riley told the other officers to call Burruss' doctor and attempt to get an Emergency Custody Order ("ECO") for Burruss. Id. ¶ 34. Officer Rigsby also advised Mrs. Burruss to go to the Magistrate's Office in order to obtain an ECO. When Burruss reiterated that he wanted to leave and did not need any help, Officer Riley said that his boss would not allow him to let Burruss leave. Shortly thereafter, Officer Rigsby told the other officers that Mrs.

3

Burruss was on her way to obtain an ECO.

At 11:45 a.m., Magistrate Rovelle Brown issued an ECO, authorizing the officers to seize Burruss pursuant to Virginia Code § 37.2-808. The ECO indicated that it was issued upon "a sworn petition" and facts from Mrs. Burruss. Id. ¶ 43. Once the ECO was obtained, the officers ordered a SWAT team to extract Burruss from his truck, although they knew that Mrs. Burruss was on her way with a key. The SWAT team used a flash grenade, broke the driver's side window of the truck, and dragged Burruss from the vehicle by his arms. They proceeded to handcuff and search Burruss. The removal caused damage to Burruss' hands, which required on-site medical treatment. Burruss was then transported to the University of Virginia Hospital for a psychiatric evaluation.

On November 18, 2015, Burruss filed a three-count complaint against the County; Officers Riley, Rigsby, Warfel, Mainzer, and Kanie D. Richardson (the "Officer Defendants"); and John Doe defendants. He alleges that defendants violated 42 U.S.C. § 1983 and state law. Specifically, Burruss claims that his rights under the Fourth and Fourteenth Amendments were violated by his unlawful seizure and detention (Count I). He also asserts claims for false imprisonment (Count II) and battery (Count III) under Virginia law. Burruss seeks nominal, compensatory, and punitive damages in an amount to be determined at trial, as well as attorney's fees and costs, and any other appropriate relief. On January 26, 2016, defendants filed a motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The court held a hearing on the motion on April 14, 2016. The motion has been fully briefed and is now ripe for disposition.

## Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. To survive dismissal for failure to state a claim, a plaintiff must establish "facial plausibility" by pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In ruling on a 12(b)(6) motion, all well-pleaded allegations in the complaint are taken as true and all reasonable factual inferences are drawn in the plaintiff's favor. Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999). However, "[a]t bottom, a plaintiff must 'nudge [her] claims across the line from conceivable to plausible' to resist dismissal." Wag More Dogs, LLC v. Cozart, 680 F.3d 359, 364-65 (4th Cir. 2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The complaint must contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 555, 570. Although a complaint need not contain detailed factual allegations, it must contain more than "labels and conclusions" and "a formulaic recitation of the elements of a cause of action will not do." Id. at 555. In considering a Rule 12(b)(6) motion, the court may consider exhibits attached to or referred to in the complaint. See Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999).

## Discussion

Defendants move to dismiss the complaint on three grounds: (1) qualified immunity bars the § 1983 claim; (2) Burruss has failed to state a claim under state law against the Officer Defendants; and (3) the County is entitled to sovereign immunity as to the state law claims. The court will consider each argument in turn.

5

## I. Qualified Immunity

Defendants first argue that the Officer Defendants are entitled to qualified immunity as to Burruss' claim under § 1983. State officers are entitled to qualified immunity from civil liability for performing discretionary functions only insofar as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Determining whether an officer is entitled to qualified immunity involves a two-step inquiry. Bailey v. Kennedy, 349 F.3d 731, 739 (4th Cir. 2003). First, the court must decide "whether a constitutional right would have been violated on the facts alleged." Id. (quoting Saucier v. Katz, 533 U.S. 194, 200 (2001)). Second, the court must consider "whether the right was clearly established at the time such that it would be clear to an objectively reasonable officer that his conduct violated that right." Id. (quoting Brown v. Gilmore, 278 F.3d 362, 367 (4th Cir. 2002)). Officers are not liable for bad guesses in gray areas; they are liable for transgressing bright lines. Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992). Thus, the protection of qualified immunity "extends to 'all but the plainly incompetent or those who knowingly violate the law.'" Raub v. Campbell, 785 F.3d 876, 881 (4th Cir. 2015), cert. denied, 136 S. Ct. 503 (2015) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

In this case, Burruss argues that the constitutional right at issue is the right to be free from seizure for mental health evaluation without probable cause. See Gooden v. Howard Cty., Md., 954 F.2d 960, 968 (4th Cir. 1992) ("We agree that the general right to be free from seizure unless probable cause exists was clearly established in the mental health seizure context."). The United States Court of Appeals for the Fourth Circuit has previously found that "[t]he lack of clarity in the law governing seizures for psychological evaluations is striking when compared to the standards detailed in other Fourth Amendment contexts, where probable cause to suspect

6

criminal misconduct has been painstakingly defined." Id. "Nevertheless, there are some clearly

established standards to guide a reasonable police officer who detains a person for mental

evaluation." Raub v. Bowen, 960 F. Supp. 2d 602, 609 (E.D. Va. 2013). At a minimum, police

traverse a "bright-line" when executing a mental health seizure without "'probable cause to

believe that the individual pose[s] a danger to [him]self or others.'" Bailey, 349 F.3d at 741

(quoting S.P. v. City of Takoma Park, Md., 134 F.3d 260, 266 (4th Cir. 1998)); see also

Cloaninger ex rel. Estate of Cloaninger v. McDevitt, 555 F.3d 324, 334 (4th Cir. 2009)

("[P]robable cause to seize a person for a psychological evaluation [exists] when the facts and

circumstances within their knowledge and of which they had reasonably trustworthy information

were sufficient to warrant a prudent man to believe that the person poses a danger to himself or

others." (internal quotation marks omitted)).

On the limited facts presented in the complaint, the court believes that Burruss has

sufficiently pled a constitutional violation based on his detention and seizure. The court first

notes that "the issue of qualified immunity turns heavily on existing binding precedent...."

Bowen, 960 F. Supp. 2d at 610. The facts in this case are distinguishable from those in Gooden,

in which the police officers personally observed the plaintiff's strange behavior and heard

multiple screams coming from the plaintiff's apartment, confirming a neighbor's previous

complaints about the plaintiff. 954 F.2d at 966. In Gooden, the Fourth Circuit found that "[h]ad

the officers done nothing—and had [the plaintiff] hurt herself or someone on the premises—the

consequences may have been irremediable." Id. at 967. Furthermore, "[i]f the officers had

refused to act until they saw blood, bruises and splintered furniture, it might have been too late

for [the plaintiff] or her neighbors." Id. Even though the officers were ultimately mistaken as to

whether the plaintiff was mentally ill, the Court still found that they were entitled to qualified

immunity in detaining the plaintiff because they acted reasonably based on their information and personal observations. Id. at 966-67. In addition, this case is also distinguishable from S.P., in which the police officers received a call from the plaintiff's husband and were confronted with an "obviously distraught and crying individual," who was "uncooperative, hostile, very upset, and irrational." 134 F.3d at 267. The plaintiff in S.P. told the officers that she had had a painful argument with her husband, and that "if not for her children, she would have considered committing suicide." Id. The Fourth Circuit again found that the officers were entitled to qualified immunity because their detention of the plaintiff for a mental health evaluation was reasonable. Id. ("The police officers did not decide to detain [the plaintiff] in haste. Rather, they had ample opportunity to observe and interview [her] before making a deliberate decision."). Finally, it is not alleged in the instant case that any of the Officer Defendants had prior encounters with Burruss, as was the situation in Cloaninger. In that case, one of the officers at the scene knew that the plaintiff had made prior suicide threats and previously had firearms at his residence. 555 F.3d at 334. The Court held that, based on this information and the initial 911 call, the police officers were entitled to qualified immunity because they acted reasonably in detaining the plaintiff for a psychiatric evaluation. Id.

Here, Burruss alleges that he, his employer, and his wife all informed the Officer Defendants that Burruss had not made any statements that he wanted to hurt himself or others. Instead, the Officer Defendants went to the Inn because Burruss' employer simply asked the ACPD to perform a welfare check on him. Furthermore, Burruss explained to the Officer Defendants that he had an unloaded gun in his vehicle for a hunting trip, and the complaint indicates that he was dressed consistent with someone who was going hunting. Although Burruss informed the Officer Defendants that he did not wish to speak with them and wanted to leave,

8

Burruss complied with all of their orders and was not visibly distraught. Nevertheless, Burruss did admit that he was having difficulties with his wife, and that he had recently switched his medications for depression. Despite these admissions, the court does not believe that the Officer Defendants were responding to an emergency situation, in which they were forced to make a quick decision. In fact, according to the complaint, Officer Riley acknowledged that he had no reason to hold Burruss, and that Burruss' depression was no different from that suffered by many others.

Taken together, the facts in this case are more akin to those found in Bailey, in which the Fourth Circuit found that the officers were not entitled qualified immunity when they detained the plaintiff for a mental health evaluation. 349 F.3d at 742. In that case, the Court held that the neighbor's call—providing that the plaintiff was depressed, suicidal, and intoxicated—was insufficient to establish probable cause that plaintiff was likely to harm himself. 349 F.3d at 739-41. When the police officers arrived at the plaintiff's home, they confirmed that the plaintiff was intoxicated. Id. at 739. However, the plaintiff denied being suicidal, and there were no weapons in the home or "any other preparations for a suicide attempt evident." Id.

Furthermore, this court declined to grant qualified immunity to the police officer defendants in a recent case, even though the plaintiff had told her husband during an argument that she would hurt herself. Fletcher v. Brown, No. 2:15CV00015, 2016 WL 1179226, at *6 (W.D. Va. Mar. 24, 2016) (Jones, J.). The court noted that there were no allegations that the plaintiff had previously threatened suicide, was under the influence of any controlled substance, had visible weapons in the home, was being treated for a mental illness, or revealed any other evidence of suicide preparations. Id. Although, in the instant case, Burruss did have an unloaded weapon and was being treated for depression, this court is unable to conclude that those facts

9

alone are sufficient to establish probable cause to detain him for a mental health evaluation. Burruss told the Officer Defendants that he was going on a hunting trip, and both his wife and his employer confirmed this information. Furthermore, the Officer Defendants were not acting on any information that Burruss intended to harm himself or others, but simply upon a request from Burrus' employer for a welfare check. See Bowen, 960 F. Supp. 2d at 612 (denying qualified immunity because the officers "acted on almost no information, and especially none concerning violence" (emphasis in original)). Based on the factual allegations in the complaint, the court does not believe that the Officer Defendants had sufficient reason to doubt the veracity of Burruss' explanation for the presence of a weapon in his truck. There may be additional evidence, uncovered through discovery, that contributed to the Officer Defendants' belief that Burruss was a danger to himself or others. However, at this stage in the litigation, without more facts as to what the Officer Defendants observed during their encounter with Burruss, the court cannot conclude that they had probable cause to detain him for a mental health evaluation. Therefore, Burruss has sufficiently stated a constitutional violation in order to satisfy the first prong of the qualified immunity inquiry.

As to the second prong, accepting Burruss' factual allegations as true, the court believes that a reasonable officer would have known that he or she did not have probable cause to detain Burruss prior to the issuance of the ECO. To defeat qualified immunity in the mental health seizure context, a plaintiff must show that the "right allegedly violated was 'clearly established' in more than just a general sense." Id. Specifically, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson, 483 U.S. 635, 640 (1987). Here, the court concludes that the complaint "plausibly alleges facts that no reasonable officer would have found sufficient to justify an

10

emergency mental-health detention...." Goines v. Valley Comm. Servs. Bd., --- F.3d ---, 2016 WL 2621262, at *8 (4th Cir. May 9, 2016). The facts alleged in the complaint show that Burruss was suffering from depression and had recently changed his medication, but otherwise do not reveal that he was a danger to himself or others. See Bowen, 960 F. Supp. 2d at 613 ("[W]here the Complaint alleges an arrest without any knowledge of a risk of harm, [the plaintiff] has sufficiently—albeit minimally—alleged that the [defendants] transgressed such a 'bright-line.'"). Although the Officer Defendants did attempt to investigate Burruss' risk of harm, the court cannot conclude that the information they obtained was sufficient for a reasonable officer to believe that there was probable cause to detain Burruss, especially given that both Mrs. Burruss and his employer confirmed that he had made no statements that he intended to harm himself or others. As the Fourth Circuit recently noted, "[f]urther inquiry is useful in the sorts of situations where officers are not presented with emergency circumstances or a 'substantial likelihood' of harmful behavior." Goines, 2016 WL 2621262, at *8 (quoting Va. Code Ann. § 37.2-808). Therefore, the court concludes that the Officer Defendants are not entitled to qualified immunity for their actions prior to the issuance of the ECO.[1] The most appropriate course at this point is to permit limited, focused discovery as to what the Officer Defendants knew at the time they detained Burruss at the Inn prior to their receipt of the ECO. See Bowen, 960 F. Supp. 2d at 613 (denying motion to dismiss based on qualified immunity and permitting additional discovery as to what the defendants knew at the time of the plaintiff's arrest).

However, the court believes that the Officer Defendants are entitled to qualified immunity for their conduct after the issuance of the ECO, as a reasonable officer would believe that he or she had probable cause at this point to detain Burruss for a mental health evaluation. In

---

[1] The court notes that many of the cases relied upon by defendants were decided at the summary judgment stage. As such, those courts had more developed factual records to review. Here, the court must construe the allegations in Burruss' favor based on the limited facts in the complaint.

11

his response to the motion to dismiss, Burruss argues that the ECO alone did not establish probable cause. Burruss relies on Malley v. Briggs, in which the Supreme Court of the United States found that the issuance of an arrest warrant alone did not entitle the officers to qualified immunity from the plaintiff's § 1983 claims. 475 U.S. 335, 345 (1986). The Court rejected the defendant's argument that "the act of applying for a warrant was per se objectively reasonable, provided that the officer believes that the facts alleged in his affidavit are true." Id. Instead, the Court noted that the appropriate inquiry was "whether a reasonably well-trained officer in [the defendant's] position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." Id.; see also Goines, 2016 WL 2621262, at *9 n.2 (noting that there is a "presumption of the reasonableness of the officer's reliance on the arrest warrant" (emphasis in original)); Torchinsky v. Siwinski, 942 F.2d 257, 262 (4th Cir. 1991) (finding that, based on Malley, there is a "presumption of reasonableness attached to obtaining a warrant").

Here, assuming the inquiry established in Malley for arrest warrants applies in the context of ECOs, the court believes that the Officer Defendants are entitled to qualified immunity for their actions after the issuance of the ECO because it was reasonable for them to rely on it to establish probable cause to detain Burruss. In the instant case, it is important to note that the Officer Defendants did not apply for the ECO themselves. Instead, Mrs. Burruss went to the Magistrate and petitioned for the ECO on her own. Upon a petition with facts supplied by Mrs. Burruss, the Magistrate issued the ECO. Because the Officer Defendants were not involved in this hearing, it was reasonable for them to believe that Mrs. Burruss provided the Magistrate with sufficient information to establish probable cause to detain Burruss for a psychiatric evaluation. This is despite the fact that the information that the Officer Defendants had from their own

12

investigation would likely be insufficient. In other words, it is possible, and perhaps probable, that Mrs. Burruss provided the Magistrate with additional information regarding Burruss' mental health and the likelihood that he would harm himself or others, which she did not share with the Officer Defendants. As such, the Officer Defendants acted reasonably in relying on the ECO to establish probable cause. Therefore, the court concludes that the Officer Defendants are entitled to qualified immunity for their actions after the ECO was issued. Accordingly, the motion to dismiss is granted in part and denied in part as to the § 1983 claim against the Officer Defendants.

In their reply brief, defendants argue that the § 1983 claim against the County should be dismissed because the complaint fails to allege a constitutional violation against the Officer Defendants. However, "[a] municipality may be held liable under ... § 1983 for constitutional violations resulting from its failure to train municipal employees." S.P., 134 F.3d at 271. The Fourth Circuit has previously held that "[t]he omission of instruction regarding the proper constitutional standard to detain an individual in the mental health context is clearly inadequate training." Id. In the complaint, Burruss alleges that his illegal seizure and detention resulted from the County's inadequate training of its police officers. Accepting Burruss' allegations as true and finding that the complaint plausibly alleges a constitutional violation, the court concludes that Burruss has stated a plausible claim that his constitutional violation resulted from the County's failure to adequately train the Officer Defendants as to the proper basis for seizing a person for a mental health evaluation. Accordingly, the motion to dismiss will be denied with respect to the § 1983 claim against the County.

## II.    Failure To State a Claim Under State Law

Defendants also argue that Burruss has failed to state claims of false imprisonment and battery under Virginia law. As to the claim of false imprisonment under Count II of the complaint, the court finds that Burruss has stated a plausible claim for relief for the time period prior to the Magistrate's issuance of the ECO. In Virginia, the intentional tort of false imprisonment is defined as "the restraint of one's liberty without any sufficient legal excuse." Lewis v. Kei, 708 S.E.2d 884, 890 (Va. 2011). However, "[i]f the plaintiff's arrest was lawful, the plaintiff cannot prevail on a claim of false imprisonment." Id. The court notes that such claim "turns largely on the same analysis addressed with respect to qualified immunity." Bowen, 960 F. Supp. 2d at 616.

Here, the complaint alleges that the Magistrate issued an ECO that the Officer Defendants believed gave them the authority to detain Burruss for a psychiatric evaluation. Burruss does not contest that the ECO was issued, but simply argues that it did not establish probable cause to detain him. As the court holds that the Officer Defendants are entitled to qualified immunity for their actions after the issuance of the ECO, the court also finds that they had a sufficient legal excuse to detain him at this point. In other words, the court believes that Burruss has not plausibly alleged that his detention was unlawful once the Officer Defendants obtained the ECO. However, as the court also holds that the Officer Defendants are not entitled to qualified immunity for the time prior to the issuance of the ECO, it follows that Burruss has stated a plausible claim for false imprisonment for the time he was prevented from leaving the Inn prior to the issuance of the ECO. Accordingly, the motion to dismiss will be granted in part and denied in part as to Count II of the complaint.

14

As to the claim of battery under Count III of the complaint, the court finds that Burruss has stated a plausible claim for relief. Battery is "an unwanted touching which is neither consented to, excused, nor justified." Koffman v. Garnett, 574 S.E.2d 258, 261 (Va. 2003). "Furthermore, 'an arrest utilizing excessive force is a battery because that touching is not justified or excused and therefore is unlawful.'" Valentine v. Roanoke Cty. Police Dep't, No. 7:10-CV-00429, 2011 WL 3273871, at *5 (W.D. Va. July 29, 2011) (Kiser, J.) (quoting Gnadt v. Commonwealth, 497 S.E.2d 887, 888 (Va. App. Ct. 1998)).

In the complaint, Burruss alleges that, once the ECO was obtained, the Officer Defendants ordered a SWAT team to extract him from the truck, and the removal caused damage to his hands. Burruss also contends that his wife had a key to the truck and was on her way to the Inn at the time he was removed from the truck. Defendants argue that they were justified in removing Burruss from the truck, as well as handcuffing and searching him, because they had an ECO from a Magistrate and Burruss refused to leave his truck. Although the court finds that the Officer Defendants are entitled to qualified immunity when they detained Burruss for a mental health evaluation after the ECO was issued, there are sufficient factual allegations that the removal was excessive for the circumstances. As such, the court concludes that the complaint states a plausible claim of battery against the Officer Defendants. Accordingly, the motion to dismiss will be denied as to Count III of the complaint.

## III. State Law Claims Against the County

Finally, defendants argue that sovereign immunity bars Burruss' state law claims against the County. The court is constrained to agree, and Burruss does not contend otherwise. "[A] municipality is immune from liability for the negligent acts or intentional torts of police officers under its employ that are committed during the performance of a governmental function."

Harrison v. Prince William Cty. Police Dep't, 640 F. Supp. 2d 688, 712 (E.D. Va. 2009) (citing

Niese v. City of Alexandria, 564 S.E.2d 127, 132-33 (Va. 2002)); Carter v. Morris, 164 F.3d 215,

221 (4th Cir. 1999) (dismissing plaintiff's state law claims of assault, battery, and false

imprisonment against the city, based on sovereign immunity, because "it is plain that this

protection extends to municipalities in the exercise of their governmental functions … one of

which is certainly the maintenance of a police force" (internal citations omitted)). Here, the acts

alleged in the complaint occurred while the ACPD officers were responding to a request for a

welfare check on Burruss, which is well within the "performance of police duties." Id. Therefore,

sovereign immunity bars Burruss' claims against the County. Accordingly, the motion to dismiss

will be granted with respect to Counts II and III against the County.

## Conclusion

For the foregoing reasons, defendants' motion to dismiss will be granted in part and

denied in part. As to Counts I and II against the Officer Defendants, the motion will be granted

with respect to their actions after the issuance of the ECO, but denied with respect to their

actions prior to the issuance of the ECO. As to Count III against the Officer Defendants, the

motion will be denied. With respect to the claims against the County, the motion will be denied

as to Count I, but granted as to Counts II and III on the basis of sovereign immunity.

The Clerk is directed to send copies of this memorandum opinion and the accompanying

order to all counsel of record.

DATED: This 14th day of June, 2016.

_____
Chief United States District Judge

16